EGAN, C. J.
*243 In this workers' compensation case, SAIF, as the insurer for claimant's current employer, ES&A, seeks review of an order of the Workers' Compensation Board assigning it responsibility for claimant's occupational disease claim and asserts that claimant's former employer, Ray-O-Lite, also SAIF's insured, is responsible. We conclude that the board did not err and therefore affirm.
Claimant has had several back injuries, the first one occurring in 2004, when claimant was working as a sign installer for SAIF's insured Ray-O-Lite. Claimant felt sudden pain while lifting a 350-pound compressor. SAIF, on behalf of Ray-O-Lite, accepted a claim for a strain and an L4-5 disc herniation, and claimant had surgery in 2005 to repair the disc herniation.
Claimant's job as a sign installer involves heavy labor. After his surgery, claimant had occupational therapy, with the goal of training him for a lighter job, but claimant did not complete the training. SAIF closed the claim in 2008 with an award of permanent partial disability, and, in 2009, claimant returned to work as a sign installer for SAIF's insured ES&A.
Claimant experienced two injuries while working for ES&A. In 2013, while using a jackhammer to break up concrete, claimant developed persistent intense pain that has not gone away. He did not immediately seek medical attention for that injury, however. In 2014, claimant developed disabling back pain after pulling a sign face out of a sign. He went to the emergency room following that incident. An MRI taken at that time was reported to show conditions similar to those shown on an MRI taken in 2006, after claimant's 2005 surgery. Based on the 2014 MRI, Dr. Keiper, who had performed claimant's first surgery, recommended another surgery to repair what he believed was a disc herniation and spinal stenosis. Claimant filed injury claims with SAIF as insurer for ES&A for the 2013 and 2014 injuries. SAIF denied the claims, and claimant requested a hearing.
Claimant also filed a claim with SAIF as insurer for Ray-O-Lite, seeking a reopening of the 2004 claim to be *244 compensated for the surgery and asserting that the accepted 2004 disc herniation was a material contributing cause of his need for treatment.
On behalf of SAIF, Drs. Hammel and Ackerman opined that claimant's condition was arthritic and had developed independently of the 2013 and 2014 injuries. Dr. Rosenbaum, a neurosurgeon, examined claimant at SAIF's request and opined that the 2014 MRI report did not describe a disc herniation. He opined that claimant's condition at that time was not related to work and did not bear any relationship to the 2004 injury; rather, it was due *217 to preexisting lumbar spondylosis and prominent functional overlay.
In September 2014, SAIF, as insurer for Ray-O-Lite, denied claimant's claim for surgical treatment. In January 2015, an administrative law judge (ALJ) upheld SAIF's denial of a reopening of the claim against Ray-O-Lite, concluding that claimant's need for treatment was not materially related to the 2004 injury; rather, degenerative changes were the major contributing cause of claimant's need for treatment.
In March 2015, claimant developed radiculopathy. In May 2015, claimant had an MRI revealing an increase in disc material at L4-5 compared with the 2014 MRI. Claimant filed a claim with SAIF as insurer for ES&A, for an occupational disease for "three successive injuries in 2004, 2013, and 2014 along with the physical demands of my work." SAIF denied that claimant's work was the major contributing cause of his disease and also denied responsibility for the claim. Claimant's request for hearing was consolidated with his requests for hearing on SAIF's denials of the two injury claims on behalf of ES&A.
At the hearing, claimant withdrew the two injury claims against ES&A and pursued only the occupational disease claim. As an initial matter, the board rejected SAIF's contention that the January 2015 order upholding SAIF's denial of the claim for medical services against Ray-O-Lite precluded consideration of claimant's 2004 injury in determining the compensability of the occupational disease. The board explained that there was no contradiction between *245 the finding in the ALJ's January 2015 order that claimant's 2004 injury was not a material contributing cause of claimant's need for treatment in 2014 and the board's subsequent consideration of the 2004 injury, along with the 2013 and 2014 injuries and claimant's heavy work, in determining whether claimant had an occupational disease. The board was correct. See Kepford v. Weyerhaeuser Co. , 77 Or. App. 363, 366, 713 P.2d 625, rev. den. , 300 Or. 722, 717 P.2d 630 (1986) (prior work injuries may be considered as part of the overall employment conditions for purposes of an occupational disease claim).
The board determined that the claim was compensable as an occupational disease under ORS 656.802(2)(a).[1] Relying on the opinion of Dr. Sherman, a neurosurgeon, the board found that claimant's heavy work activities, together with his three injuries, are the major contributing cause of his current disc herniation. SAIF does not challenge that determination on judicial review.
The board also determined that the occupational disease was the responsibility of claimant's current employer, ES&A. The board rejected SAIF's contention that the assignment of responsibility was governed by ORS 656.308(1) and that responsibility remained with Ray-O-Lite.
ORS 656.308(1) provides:
"When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition. If a new compensable injury occurs, all further compensable *246 medical services and disability involving the same condition shall be processed as a new injury claim by the subsequent employer. The standards for determining the compensability of a combined condition under ORS 656.005(7) shall also be used to determine the occurrence of a new compensable injury or disease under this section."
*218 (Emphasis added.) The board concluded that ORS 656.308 was not implicated, because, although the medical evidence showed that the 2004 injury made claimant's lumbar disc more vulnerable, the current condition itself is a new condition, different from the one suffered in 2004, and did not "involve" the 2004 injury. Instead, the board assigned responsibility to ES&A under the last injurious exposure rule. See Bracke v. Baza'r , 293 Or. 239, 243-44, 248-49, 646 P.2d 1330 (1982) (when multiple employers contribute to an occupational disease claim, responsibility is assigned under the last injurious exposure rule to the last employer who could have contributed to the disease before the worker first seeks treatment or becomes disabled, whichever occurs first).
On judicial review, SAIF assigns error to the board's determination that ORS 656.308(1) is inapplicable, contending that the board's findings in support of that determination are inconsistent with each other. For the reasons explained here, we conclude that the board did not err.
It is undisputed that, although there is some ambiguity in ORS 656.308(1), the provisions for assigning responsibility under the statute apply to both injuries and occupational diseases. See Liberty Northwest Ins. Corp. v. Senters , 119 Or. App. 314, 317, 850 P.2d 403 (1993) (when a worker sustains a new occupational disease that involves the same condition as a previously accepted injury, responsibility is assigned under ORS 656.308(1) ). SAIF contends that claimant's new occupational disease "involves" the injury previously accepted by Ray-O-Lite. In Multifoods Specialty Distribution v. McAtee , 333 Or. 629, 635-36, 43 P.3d 1101 (2002), the Supreme Court held that "involves," for purposes of ORS 656.308, means "to have within or as a part of itself" or "to have an effect on." The court held in McAtee that, whether a new injury or occupational disease "involves" a prior injury is a question of fact. Id . at 636, 43 P.3d 1101.
*247 SAIF contends that the board erred in determining that claimant's new occupational disease did not involve the same condition previously accepted, asserting that the board's finding that the second L4-5 disc herniation did not involve the original L4-5 disc herniation is inconsistent with other findings and is not supported by substantial evidence or substantial reason. SAIF complains that if, as the board found, the original disc herniation and surgery left the L4-5 disc "abnormal" and less resilient, then, necessarily, the original L4-5 disc herniation "had an effect" on the new occupational disease, and the new occupational disease "involves" the original injury. We reject SAIF's assertion that a finding that the L4-5 disc was abnormal or less resilient after the 2004 injury and 2005 surgery means, necessarily, that the new occupational disease "involves" the original disc herniation. The medical evidence would support findings that, despite leaving the L4-5 "abnormal" and less resilient, the first herniation had resolved and the current herniation is new.
SAIF also contends that there is a contradiction between the board's finding that the occupational disease did not "involve" the 2004 injury and the board's reliance on Sherman's opinion, for purposes of determining compensability, that claimant's condition was caused by a combination of claimant's cumulative work activities and work-related injuries (including the prior accepted L4-5 disc herniation). SAIF contends that, if a claimant's work activities and prior injuries contribute to an occupational disease, the occupational disease necessarily "involves" the earlier injury, because it has the prior disc herniation "within or part of itself," and the board's order therefore lacks substantial reason. We also reject that contention. SAIF's argument overlooks the fact that ORS 656.308(1) assigns presumptive responsibility to the first employer only if the claimant does not experience a new injury or occupational disease involving the same condition. Thus, even if the new occupational disease or injury involves the same condition, responsibility will shift under ORS 656.308. An "occupational disease" is defined to include "[a]ny series of traumatic events or occurrences which requires medical services or results in physical disability or death," ORS 656.802(1)(a)(c), and, "[p]rior work injuries may be considered as part of the overall 'employment *248 conditions' " when evaluating *219 the major contributing cause of an occupational disease. Hunter v. SAIF , 246 Or. App. 755, 760, 268 P.3d 660 (2011). Thus, a claimant can experience a new occupational disease or injury that encompasses an earlier injury.
The board found here that claimant has experienced a new occupational disease, and that finding is not challenged and is supported by substantial evidence. That finding distinguishes this case from Senters . In Senters , while working for Liberty's insured in 1988, the claimant suffered a low back injury necessitating a lumbar laminectomy at L5-S1. 119 Or. App. at 316, 850 P.2d 403. Liberty accepted the claim as an injury. Subsequently, in 1990, after claim closure and while working for SAIF's insured, the claimant began experiencing identical symptoms and underwent a second lumbar laminectomy at L5-S1. SAIF denied the compensability of the claim as well as responsibility. The board found that the second surgery was compensable as an "aggravation" of the claimant's 1988 injury and that the 1988 injury was the major contributing cause of the need for treatment of the back in 1990. Id .
In determining responsibility for the claim, the board applied ORS 656.308 and held that, in order for Liberty to shift responsibility to SAIF, Liberty had to establish that the claimant had experienced a new injury or occupational disease at the subsequent employment. The board determined that Liberty had not met that burden and that responsibility remained with Liberty. Id . at 317, 850 P.2d 403. We affirmed the board's order, concluding that its findings were supported by substantial evidence. We also agreed with the board's analysis. Id.
As to the assignment of responsibility under ORS 656.308, we said in Senters that the board was correct that the statute requires proof of a new occupational disease or injury in order to shift responsibility from an employer with an earlier accepted claim, and that, in order to establish a new occupational disease, Liberty was required to show that employment conditions with SAIF's insured were the major contributing cause of the claimant's disease or its worsening. We explained:
*249 "That is the standard of proof for the establishment of an occupational disease, ORS 656.802(2), and we agree with the Board that that is what Liberty must show in order to shift responsibility for claimant's back condition to SAIF."
Id . Thus, the issue in Senters under ORS 656.308(1) was whether the claimant had experienced a new injury or occupational disease, and the board found that he had not. We upheld that determination, concluding that it was supported by substantial evidence. Id.
Here, unlike in Senters , the board found that claimant had experienced a new occupational disease, and, as we have held, that finding is supported by substantial evidence. SAIF does not dispute the board's determination that claimant has suffered a new occupational disease, but contends only that, when multiple employers contribute to an occupational disease, initial responsibility is assigned under ORS 656.308(1) to the employer with a prior accepted claim involving the same condition. Citing ORS 656.802(2) and Senters , SAIF recites as a general rule that the employer with a prior accepted claim remains presumptively responsible unless the claimant can show that his work for the subsequent employer was the major contributing cause of the disease. But SAIF's only contention on judicial review is that the board's order that claimant's new occupational disease does not "involve" the prior accepted claim is not supported by substantial evidence or substantial reason, because the board's factual findings are internally inconsistent. SAIF does not contend that, when it has been established that the worker has suffered a new occupational disease, in order to shift responsibility from an employer with an accepted claim to a subsequent employer under ORS 656.308(1), it is the first employer's (or the claimant's) burden to show that the subsequent employment was the major contributing cause of the disease. To the extent that SAIF might be reading Senters as imposing such a requirement, we reject it. Our opinion in Senters dealt only with the requirement to establish a new occupational disease, and we do not understand that opinion to impose an additional requirement on *220 the employer with the prior accepted claim (or the claimant) to establish that the subsequent employment was the major contributing cause of the *250 occupational disease in order to shift responsibility under ORS 656.308(1).
SAIF's argument also looks past the requirement in ORS 656.308(1) that the first employer's presumptive responsibility exists only with respect to future compensable medical services and disability "relating to the compensable condition"-that is, the condition previously accepted by the first employer. See Brown v. SAIF , 361 Or. 241, 274, 391 P.3d 773 (2017) (The phrase "otherwise compensable injury" refers to the particular medical condition that an employer has accepted as compensable.). As we said in SAIF v. Yokum , 132 Or. App. 18, 23, 887 P.2d 380 (1994), for ORS 656.308(1) to be triggered, "there must be an accepted claim for the condition ." (Emphasis added.) The statute does not apply to an initial claim. Id. at 24, 887 P.2d 380. See SAIF v. Webb , 181 Or. App. 205, 209 n 3, 45 P.3d 950 (2002) (the parties agreed that ORS 656.308(1) was inapplicable to assign responsibility to the first employer where the claimant's occupational disease had not been previously accepted by that employer); Sanford v. Balteau Standard/SAIF Corp. , 140 Or. App. 177, 182, 914 P.2d 708 (1996) ("[U]nder ORS 656.308(1), responsibility for claimant's 1993 treatment is assigned to the insurer with the most recent accepted claim involving that same condition. " (Emphasis added.) ); see also Waste Management v. Pruitt , 224 Or. App. 280, 286, 198 P.3d 429 (2008), rev. den. , 346 Or. 66, 204 P.3d 96 (2009) (in the context of an initial claim for an occupational disease based on the theory that the claimant's prior employment conditions and previous injuries had caused an occupational disease, the board did not err in applying the last injurious exposure rule to determine which employer should be responsible for the condition). We have reviewed the record and conclude that substantial evidence supports the board's finding that claimant's current condition constituting an occupational disease is not the same condition as the disc herniation accepted by Ray-O-Lite in 2004. The 2004 disc herniation and strain was an injury, sudden in onset, as the result of lifting a 350-pound compressor. The board found that claimant developed his current condition gradually from 2009 to 2015 as a result of three injuries and everyday work activities involving a lot of lifting and bending. Claimant's occupational disease has not been previously *251 accepted by Ray-O-Lite and is, in effect, an initial claim for a new occupational disease. Therefore, for that reason, ORS 656.308(1) does not apply in the assignment of responsibility. Yocum , 132 Or. App. at 23, 887 P.2d 380.
The board did not err in concluding that claimant's new occupational disease did not involve the 2004 injury and that ORS 656.308 does not apply to assign presumptive responsibility to Ray-O-Lite.
Affirmed.

ORS 656.802 provides, as relevant:
"(1)(a) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:
" * * * * *
"(C) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death.
" * * * * *
"(2)(a) The worker must prove that employment conditions were the major contributing cause of the disease."